STATE OF MINNESOTA

IN SUPREME COURT

A08-2124

| | |
|---|---|
| Certified Question | Magnuson, C.J. |
| U.S. District Court, Western District of Arkansas, | Took No Part, Anderson,<br>G. Barry, and Gildea, JJ. |

Rachel Fleeger,

Plaintiff,

vs.

Filed: September 3, 2009
Office of Appellate Courts

Wyeth and its division Wyeth Pharmaceuticals, Inc.,

and

Greenstone, Ltd.,

Defendants.

————————————

David M. Langevin, Rhett McSweeney, McSweeney & Fay PLLP, Minneapolis, Minnesota; and

Erik B. Walker, Hissey, Kientz & Herron PLLC, Houston, Texas; and

Martin D. Crump, Davis and Feder P.A., Gulfport, Mississippi, for plaintiff.

Edward F. Fox, Charles E. Lundberg, Carrie L. Hund, Bassford Remele, Minneapolis, Minnesota; and

Jack W. Vardaman, Jr., Steven L. Urbanczyk, F. Lane Heard III, Williams & Connolly LLP, Washington, DC, for Wyeth defendants.

Gary Hansen, David P. Graham, Oppenheimer, Wolff and Donnelly LLP, Minneapolis, Minnesota; and

Steven Glickstein, William Hoffman, Robert Grass, Alan E. Rothman, Kaye Scholer LLP, New York, New York, for defendant Greenstone, Ltd.

---

## SYLLABUS

In a case commenced in Minnesota between non-resident parties where the events giving rise to the claims occurred outside Minnesota before August 1, 2004, stare decisis considerations dictate that the Minnesota statute of limitations will apply.

Certified question answered in the affirmative.

## OPINION

MAGNUSON, Chief Justice.

Plaintiff Rachel Fleeger, a resident of Pennsylvania, took hormone medication manufactured by defendants Wyeth, Wyeth Pharmaceuticals, Inc. (Wyeth) and Greenstone, Ltd. Neither defendant is a Minnesota resident; however, both defendants admit that Minnesota courts have general personal jurisdiction over them. Fleeger filed her lawsuit in the United States District Court, District of Minnesota, and the Judicial Panel on Multidistrict Litigation (MDL) transferred the case to the United States District Court, Eastern District of Arkansas (the MDL court). Pursuant to Minn. Stat. § 480.065, subds. 3, 4 (2008), the MDL court certified a question of law to this court, which we accepted and reformulated as follows:

> In a case commenced in Minnesota, does the Minnesota statute of limitations apply to the personal injury claims of a non-Minnesota resident against a defendant not a resident of Minnesota, where the events giving rise to the claims did not occur in Minnesota and took place before August 1, 2004?

2

We answer the certified question "yes."

From 1995 to 2001, Fleeger took Premarin and Prempro, two hormone therapy medications sold and distributed by defendant Wyeth. From 1995 to 1996, Fleeger took medroxyprogesterone, a generic hormone therapy medication manufactured and distributed by defendant Greenstone. Fleeger lived in Pennsylvania at the time that she used the medications. In 2001, she was diagnosed with breast cancer. She received the diagnosis and subsequent treatment in Pennsylvania.

In 2002, a study by the Woman's Health Initiative (WHI) related hormone therapy to an increased risk of breast cancer and heart disease. Subsequent studies by WHI also concluded that hormone therapy may be linked to an increased risk for breast cancer. In the wake of the 2002 study, thousands of plaintiffs nationwide, including Fleeger, sued Wyeth and other defendants, alleging that hormone therapy caused their breast cancer. For purposes of answering the certified question, we will assume that Fleeger's claim accrued upon the release of the WHI study.[1]

---

[1]    We recognize that there is a dispute over whether the claim arose at the release of the WHI study or whether it arose earlier. Under Minnesota law, a cause of action accrues when it can be brought in a court of law without being dismissed for failure to state a claim. *MacRae v. Group Health Plan, Inc.*, 753 N.W.2d 711, 716-17 (Minn. 2008) (citing *Dalton v. Dow Chem. Co.*, 280 Minn. 147, 153, 158 N.W.2d 580, 584 (1968)). The parties have not addressed when Fleeger's claim might have accrued under Pennsylvania law, but have agreed for purposes of answering this certified question that we may assume Fleeger's claim arose in 2002.

Fleeger filed her case in the United States District Court, District of Minnesota in 2007. Fleeger does not claim that she has any significant connections to Minnesota. Neither Wyeth nor Greenstone are incorporated or have their principal place of business in Minnesota. Pennsylvania's 2-year statute of limitations barred Fleeger's claim, 42 Pa. Cons. Stat. Ann. § 5524 (West 2009), but Minnesota's 6-year statute of limitations did not, Minn. Stat. § 541.05 (2008).   More than 4,000 other plaintiffs in the MDL proceedings have filed cases in Minnesota against Wyeth or Greenstone, despite not being residents of Minnesota. The federal multi-district panel transferred Fleeger's case and thousands of others to the MDL court, which asks us to resolve the question of whether Minnesota's statute of limitations applies to this case.

From the early days of statehood until 1977, Minnesota had a "borrowing statute"—a statute that adopted the statute of limitations of the state where the claim arose, with an exception for Minnesota resident plaintiffs. *See* Minn. Stat. § 541.14 (1976). In 1977 the Minnesota Legislature repealed the borrowing statute. Act of May 20, 1977, ch. 187, § 1, 1977 Minn. Laws 310. Available legislative history suggests that the legislature acted because it believed we would adopt a choice-of-law analysis in statute of limitations cases different from the one we had historically applied. *See* Hearing on S.F. 380, S. Judiciary Comm., 70th Minn. Leg., Mar. 9, 1977 (remarks of S. Davies), *cited in* Willard L. Converse & Pamela Converse Zenn, *Minnesota's Choice of Law Dinosaur: Still in the Jurassic Period When it Comes to Statutes of Limitations*, Minnesota Defense, Summer 1996, at 2, 3.

The legislature's impression that our choice-of-law jurisprudence was changing arose in part from our decision in *Milkovich v. Saari*, 295 Minn. 155, 203 N.W.2d 408 (1973). Prior to that decision, for substantive choice-of-law issues, Minnesota used the rule of *lex loci*—applying the law of the location where the tort occurred. *Id.* at 157-58, 162, 203 N.W.2d at 410, 412. In *Milkovich*, we expressly stated that we were departing from the doctrine of *lex loci* and adopting a more "modern" five-part test as articulated by Professor Robert Lefler. *Id.* at 161-64, 203 N.W.2d at 412-13.

The next year, in *Myers v. Government Employees Insurance Co.*, 302 Minn. 359, 361-62, 225 N.W.2d 238, 240-41 (1974), we considered whether Louisiana's direct-action statute applied in a suit brought by Minnesota residents in Minnesota against an insurer arising out of an accident that occurred in Louisiana. Louisiana's statute of limitations barred the action, but Minnesota's did not. *Id.* at 361-63, 225 N.W.2d at 240-41. We analyzed both the statute of limitations and direct action issues together and applied the *Milkovich* tests to determine that the Minnesota statute of limitations applied as well as the Louisiana direct action statute. *Id.* at 243, 365-69, 225 N.W.2d at 242-43.

Despite the legislature's assumption that we would apply the Lefler analysis to all choice-of-law cases, we declined to do so in *Davis v. Furlong*, 328 N.W.2d 150, 150, 153 (Minn. 1983), where we applied Minnesota's procedural rules regarding joinder to a case brought in Minnesota by a Minnesota resident arising out of a Wisconsin automobile accident. We concluded that "the *Milkovich* analysis should not be extended to conflicts of procedure" and that "when conflicts of procedure arise, the *lex fori* is to be applied." *Id.* at 153.

In *Davis*, we did not discuss whether statutes of limitation were procedural or substantive, but we did clearly affirm that the law of the forum applies to procedural conflicts. *Id.* The holding that the law of the forum applies to procedural conflicts was consistent with our long-standing treatment of statute-of-limitations issues not governed by the borrowing statute. In *Fletcher v. Spaulding*, 9 Minn. 64 (Gil.at 54) (1864), a suit brought by a Massachusetts resident against a former Massachusetts resident living in Minnesota, we held that the action was barred by the Minnesota statute of limitations. Although we did not address the borrowing statute in that case, we said that "[t]he limitation of actions will always be governed by the *lex fori*, unless there is some provision therein referring such limitation to other law. . . . Time, place, and manner[ ] of commencing a suit pertain to the remedy, and he who elects to prosecute his action in this State must abide by our laws on all these subjects." *Id.* at 66 (Gil. at 55-56). *See also Weston v. Jones*, 160 Minn. 32, 35, 199 N.W. 431, 432-33 (1924) where, in the context of addressing a tolling argument, we said that "[i]t is a fundamental principle that remedies are governed by the law of the forum, and this principle is controlling in all matters relating to the statute of limitations."

In *Whitney v. Daniel (In re Estate of Daniel)*, 208 Minn. 420, 420-22, 294 N.W. 465, 466 (1940), a Minnesota plaintiff sued a Minnesota defendant based on a car accident that occurred in Iowa. The plaintiff filed the lawsuit in Minnesota under an Iowa wrongful death statute, which had a 2-year statute of limitations. *Id.* at 421-23, 294 N.W. at 467. Minnesota had a 6-year statute of limitations. *Id.* at 427, 294 N.W. at 469. We analyzed whether the statute of limitations affected the right, in which case the *lex*

6

*loci* would apply, or whether it conditioned the remedy, in which case the *lex fori* would apply. *Id.* at 429, 294 N.W. at 469-70. We ultimately concluded that the statute of limitations conditions the remedy because it merely "prescribes the time within which rights may be enforced[,]" and applied the Minnesota statute of limitations. *Id.* at 429, 294 N.W. at 470. *See also Am. Mut. Liab. Ins. Co. v. Reed Cleaners*, 265 Minn. 503, 506 n.1, 122 N.W.2d 178, 180 n.1 (1963) (noting that "Limitation of time relates to the remedy and is governed by the law of the forum" in applying Minnesota statute of limitations).

In other circumstances, we have also described statutes of limitations as procedural. *See Weston v. McWilliams & Assocs., Inc.*, 716 N.W.2d 634, 641 (Minn. 2006) (noting that "statutes of limitations are procedural in nature," as opposed to statutes of repose which are substantive); *Kennecott Holdings Corp. v. Liberty Mut. Ins. Co.*, 578 N.W.2d 358, 361 n.7 (Minn. 1998) ("Although . . . statutes of limitations have both substantive and procedural aspects," they are "primarily procedural laws"); *City of Willmar v. Short-Elliott-Hendrickson, Inc.*, 512 N.W.2d 872, 875 (Minn. 1994) ("[A] statute of limitations does not negate liability; it is only a procedural device that is raised after the events giving rise to liability have occurred, and which precludes the plaintiff from collecting on that liability."); *Calder v. City of Crystal*, 318 N.W.2d 838, 844 (Minn. 1982) (describing a statute of limitations as "procedural"); *State ex rel Moser v. Kaml*, 181 Minn. 523, 527, 233 N.W. 802, 804 (1930) (holding that because a statute of limitations affects the remedy and not the right, the defense can be waived).

7

In 2004, the legislature enacted a new borrowing statute based on the Uniform Conflict of Laws-Limitations Act. Minn. Stat. § 541.31 (2008).[2] The new statute, which would require application of Pennsylvania's statute of limitations if it controlled in this case, only applies to "claims arising from incidents occurring on or after August 1, 2004." Minn. Stat. § 541.34 (2008). Because the parties agree, for purposes of the certified question, that Fleeger's claim arose in 2002, the statute does not determine the outcome here. Rather, the common law does.

The common law in Minnesota is clear. When directly faced with the issue, we have considered statutes of limitations to be procedural without exception.[3] As a result,

_____

[2]    The statute states:

Subdivision 1. General.  (a) Except as provided by subdivision 2 and section 541.33, if a claim is substantively based:

(1) upon the law of one other state, the limitation period of that state applies; or

(2) upon the law of more than one state, the limitation period of one of those states chosen by the law of conflict of laws of this state applies.

(b) The limitation period of this state applies to all other claims.

Subd. 2.  Action arising out of state; resident plaintiff.  If a cause of action arises outside of this state and the action is barred under the applicable statute of limitations of the place where it arose, the action may be maintained in this state if the plaintiff is a resident of this state who has owned the cause of action since it accrued and the cause of action is not barred under the applicable statute of limitations of this state.

[3]    We have noted on more than one occasion that statutes of limitation have both procedural and substantive aspects. *See State v. Lemmer*, 736 N.W.2d 650, 657-58 (Minn. 2007) (recognizing that statutes of limitations are "both procedural and

(Footnote continued on next page.)

because we apply the *lex fori* to procedural conflicts, we have applied the Minnesota statute of limitations to cases properly commenced here regardless of whether those cases have any connection to this state. The question before us is whether that common law rule should continue to guide us.

Defendants cite a great deal of legal commentary supporting a departure from our established precedent. *See, e.g.*, Russell Weintraub, *Commentary on the Conflict of Laws* § 3.2C2 (3d ed. 1986); Robert Leflar et. al., *American Conflicts Law* § 127 (4th ed. 1986); Laura Cooper, *Statutes of Limitations in Minnesota Choice of Law: The Problematic Return of the Substance-Procedure Distinction*, 71 Minn. L. Rev. 363, 381 (1986). Moreover, the Restatement (Second) of Conflict of Laws § 142 (1998) uses a substantive choice of law analysis. We recognize that there are strong policy reasons to alter our common law rule. Because of those policy reasons, other courts have departed from the *lex fori* choice of law rule for statutes of limitations in recent years. *See, e.g., DeLoach v. Alfred*, 960 P.2d 628, 629 (Ariz. 1998); *New England Tel. & Tel. Co. v. Gourdeau Constr. Co.*, 647 N.E.2d 42, 46 (Mass. 1995); *Heavner v. Uniroyal, Inc.*, 305 A.2d 412, 418 (N.J. 1973).

---

(Footnote continued from previous page.)
substantive in nature," *citing State v. Johnson*, 514 N.W.2d 551, 555 (Minn. 1994)). We recognized in *Johnson* that statutes of limitations possess substantive qualities because they are outcome determinative. 514 N.W.2d at 555. Those comments were *dicta*, however, as statutes of limitations were not at issue in those cases. Furthermore, since our decision in *Johnson*, we have reaffirmed that statutes of limitations are "primarily procedural." *E.g., Kennecott*, 578 N.W.2d at 361 n.7.

But the situation presented here differs dramatically from the situations presented to those other state courts, as our legislature has already acted to change the law. *See* Minn. Stat. § 541.34.  When considering changes in our common law, we are mindful of the importance of the rule of stare decisis.  Although we are not bound to "unsound principles," following precedent promotes stability, order, and predictability in the law. *Oanes v. Allstate Ins. Co.*, 617 N.W.2d 401, 406 (Minn. 2000).  Therefore, we require "a compelling reason" to overrule precedent. *State v. Lee*, 706 N.W.2d 491, 494 (Minn. 2005) (internal quotation marks omitted).

Here, we do not have a compelling reason to overrule our long-standing precedent that the Minnesota statute of limitations applies in cases properly commenced here.  The new borrowing statute became effective on August 1, 2004, and all cases arising after that date are subject to it.  A prospective change in the common law would apply only to cases commenced between the date of this decision and August 1, 2010.  And a retroactive change would only affect cases that arose before August 1, 2004, which have not yet been finally resolved.  Such a limited effect does not present the compelling reason necessary to overrule our precedent.

Certified question answered in the affirmative.


ANDERSON, G. Barry, and GILDEA, JJ., took no part in the consideration or decision of this matter.